Callahan, J.
The Emergency Housing Joint Board, a body of public officials of the State of New York, acting pursuant to the provisions of the Emergency Housing Law (L. 1946, chs. 3, 681), has filed a notice of appropriation in proceedings to condemn certain property in the city of Long Beach, county of Nassau. The stated purpose of the Emergency Housing Law is to aid returning veterans and others to secure dwelling accommodations in a condition of public emergency involving an insufficient supply of dwellings declared by said statutes to exist.
The plaintiff, as owner of said property, seeks to enjoin the proceedings of the board, contending that it is exceeding its authority under the statute. He disputes the existence of a housing shortage in Long Beach, and contends that the board is acting illegally in attempting to take part of his premises for an indefinite term, and without personal service of notice of the taking upon him. Special Term has denied plaintiff’s motion for a temporary injunction, and has granted defendants’ cross motion to dismiss the complaint. Plaintiff appeals.
*257 The property taken consists of forty-three scattered apartments out of ninety-six in a multiple family apartment house situated in Long Beach, New York. The landlord has been furnishing elevator and similar service to tenants.
The notice of appropriation filed in the offices of the Department of State and the Clerk of Nassau County reads as follows:
“ State of New York
Emergency Housing Project, Long Beach, L. I., New York Map No. 2 Exclusive Use and Occupancy
Parcel No. 2 - —--—
Breakers Hotel (Reputed Owner)
“ Map of property in the City of Long Beach, County of Nassau, State of New York which the Superintendent of Public Works deems it necessary to acquire by appropriation for the purpose of emergency housing pursuant to Article 9A of Chapter 44A of- the Consolidated Laws known as the Public Housing Law, as added by Chapter 3 of the Laws of 1946 and as amended by Chapter 681 of the Laws of 1946.
“ Pursuant to Law aforesaid and pursuant to a Resolution duly adopted by the Emergency Housing Joint Board at a meeting held in the City of Albany, New York on the 8th day of May, 1946, there is hereby appropriated for the purpose of emergency housing, the exclusive use and occupancy with right of access together with the use of the following services and the use of facilities to be used in common with other occupants of the building, namely, 1. elevator service, 2. garbage disposal, 3. electric service, 4. gas service, 5. refrigeration, 6. furnishings, 7. the right to adequate heat from October 1,1946 to April 30, 1947, 8. water, for a period ending the 30th day of April, 1947, unless sooner terminated in whole or in part by order of the Superintendent of Public Works all that property hereinafter described and designated as Parcel 2.
“ Parcel 2.
“ Apartments numbered B1 and B2 situate in the basement thereof, and apartments numbered 103, 104, 105, 107, 108, 109, 111, 112A situate on the first floor thereof and apartments numbered 203, 204, 205, 206, 208, 209, 210, 211, 212, 217 situate on the second floor thereof and apartments numbered 303, 304, 305, 306, 308, 309, 310, 311, 312, 317 situate on the third floor thereof and apartments numbered 403, 404, 405, 406, 409, 411, 412, 417 situate on the" fourth floor thereof and apartments numbered 503, 504, 506, 517 situate on the fifth floor thereof. The afore *258 said building is situate on all that piece or parcel of land described as follows * *
A detailed description by metes and bounds of the real property in which the apartments are located follows the above.
The defendants conceded upon the argument of this appeal that the statute under which the appropriation was made limits the power of eminent domain conferred on the Emergency Housing Joint Board to the taking of real property, or “ an interest, term of years, easement or right in and to such real property.” They further conceded that the appropriation, insofar as it relates to the furnishings of the apartments and to the rendition of any compulsory services by the owners, was in excess of legal authority. The plaintiff, therefore, is entitled to an injunction against such excessive appropriation.
There remain the issues as to whether the taking was otherwise legal.
As to the existence of a housing shortage in Long Beach, we find that the Legislature has declared the insufficiency of housing accommodations as a State-wide condition. The correctness of that declaration cannot be disputed either in fact or in law. The furnishing of additional housing facilities in any part of the State might tend to alleviate that insufficiency. The wisdom of the means adopted by a co-ordinate branch of the government to obtain that end is not a matter for judicial inquiry.
The apartments taken have heretofore been permitted to remain idle for a large part of each year, being rented solely for summer occupancy. It would seem clear that taking of apartments for year-round occupancy in order to relieve the housing shortage was a taking for a public purpose in view of the condition of emergency found by the Legislature to exist. This is not a situation where the sole end accomplished is the taking of apartments from one group of lessees for the purpose of giving them to another. While the present taking does deprive one group of occupants of the right to use apartments during the summer months, it furnishes a second group of families with year-round housing accommodations. We think that such a taking has a sufficient tendency to increase housing-facilities, and thus is a benefit to the public as a whole so as to constitute a public purpose, and the basis for the exercise of the power of eminent domain. (Matter of N. Y. City H. Authority v. Muller, 270 N. Y. 333; Matter of Murray v. LaGuardia, 291 N. Y. 320.)
*259 ' Plaintiff claims that a taking of parts of the structure as distinguished from the whole thereof was unauthorized. We construe the Emergency' Housing Law to permit such a taking. The statute provides for the appropriation of an interest in rehl property. The temporary use of separable apartments would be such an interest. The statute further provides that the owner may present to the Court of Claims a claim for the value of any property appropriated and for legal damages. The taking of forty-three apartments out of a total of ninety-six might present more complex problems ■ in ascertaining the damage suffered" by the lessees and the owners than would arise if the whole premises were taken. But we see no reason why the value of the forty-three leaseholds taken may not be computed, as well' as any damage that might be caused to the owner, either direct or consequential, including damages based on the value of any facilities appropriated.
■ That the State has taken the apartments and facilities “ for a period ending the 30th day of April, 1947, unless sooner terminated in whole or in part ’ ’ does not, in our opinion, render the appropriation such an indefinite "one as to deprive plaintiff of an opportunity to secure just compensation. The market value of a leasehold interest for a maximum period with a provision for an earlier cancellation of the lease would, it seems to us, be ascertainable. Payment of compensation need not be made in advance so long as the act authorizing condemnation provides for a certain, definite and adequate source and manner of payment. (Sage v. City of Brooklyn, 89 N. Y. 189.) But even if compensation is required to be ascertainable as of the time of the taking, this end could be accomplished here, although the right to shorten the term was reserved.
United States v. Petty Motor Co. (327 U. S. 372, 374) was a proceeding to fix compensation where the Federal Government took a temporary use of a building, parts of which were under lease to various tenants. The condemnation occurred in 1942 for the period until June 30, 1945, with the right in the condemnor to surrender the premises on June 30, 1943, or June 30, 1944, upon sixty .days’ written notice to the owner. The question presented was the compensation to be awarded tenants for leasehold interests which expired on various dates prior to June 30, 1945. The court said: “ Although an earlier surrender might occur by the election of the United States; the ■ estate sought did not necessarily expire until June 30, 1945. *260 * * * When the shortening of the term is wholly at the • election of the lessee, the term of the leasehold for the purpose of determining the extent of the taking must be considered to be its longest limit. ”
In U. S. v. General Motors Corp. (323 U. S. 373) there had been an original taking by the Federal Government of a temporary use of leased premises expiring June 30, 1943. After judgment had been entered in proceedings to award compensation, the government amended its petition so that the taking was renewable for additional periods at the option of the Secretary of War. In a footnote found on pages 376 and 377 of the published reports of its decision, the Supreme Court stated that the additional value of the option to renew must be included in the judgment awarding compensation.
Assuming that the Court of Claims of this State would follow the rule of damage indicated in the Petty Motor Co. case (supra), there could be no doubt that full and' just compensation would be ascertainable as of the time of the taking.
Where a duly constituted judicial tribunal is provided as a forum for the fixation of compensation, due process is observed, and protection of the constitutional right that no property shall be taken without just compensation is fulfilled, for we must assume that just compensation will be awarded through the exercise of the judicial process prescribed.
As to the plaintiff’s final claim that notice of the taking was not served personally on the owner, we find that lack of such personal notice at most affects the right' to maintain summary proceedings to oust occupants, and does not form a limitation on'the right to condemnation. (See Highway Law, § 30.)
The order appealed from should be reversed, without costs, and the motion for a temporary injunction granted solely to the extent above indicated, and otherwise denied. The cross motion to dismiss the complaint should be denied.